NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WHITSERVE LLC,**

*Plaintiff-Appellant*

**v.**

**DONUTS INC., NAME.COM, INC.,**

*Defendants-Appellees*

---

2019-2240

---

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-00193-CFC, United States District Judge Colm F. Connolly.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**WHITSERVE LLC,**

*Plaintiff-Appellant*

**v.**

**ENOM, LLC,**

*Defendant-Appellee*

---

2019-2241

---

Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-00194-CFC, United States District Judge Colm F. Connolly.

————————————

Decided:  April 10, 2020

————————————

MICHAEL JOSEPH KOSMA, Whitmyer IP Group LLC, Stamford, CT, for plaintiff-appellant.  Also represented by STEPHEN BALL.

SHARON DAVIS, Rothwell, Figg, Ernst & Manbeck, PC, Washington, DC, for defendants-appellees.  Also represented by NICOLE DEABRANTES.

————————————

Before PROST, *Chief Judge,* O'MALLEY and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

WhitServe LLC owns U.S. Patent Nos. 5,895,468 and 6,182,078, both of which describe and claim systems and methods by which providers of professional services, using the Internet, send reminders to clients and obtain responses from them.  We addressed these patents in *WhitServe LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) (*WhitServe I*), where we resolved questions of infringement and anticipation, among other issues.  This case involves an issue not previously presented: the eligibility of the '468 and '078 patent claims under 35 U.S.C. § 101.  The district court held all claims ineligible. *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 574–75 (D. Del. 2019).  We affirm.

I

WhitServe's '468 and '078 patents, in relevant part, share a specification. The patents describe software that runs on a professional service provider's computer to help professionals, *e.g.*, attorneys, perform functions for clients that "involve a series of deadlines" but cannot be performed without client authorization or input. '468 patent, col. 1, lines 11–16; *id.*, col. 2, lines 39–45. The computer, running the software, automatically queries a database of client deadlines and both sends due-date reminders to clients and obtains client responses over the Internet. *Id.*, col. 1, lines 6–9; *id.*, col. 2, lines 39–45. As a client deadline approaches, the system sends a notice to the client—via the Internet—that includes a client response form; the client provides a response via the form; the system returns the form to the professional service provider; and either the system or the professional takes an action based on the client's response. *Id.*, col. 3, lines 17–67; *see also id.*, col. 5, lines 8–56 (describing an alternative embodiment using a webpage to collect and route client responses).

In February 2018, WhitServe filed two complaints—one against Donuts Inc. and Name.com, Inc., and another against Enom, LLC (together, Donuts)—in the United States District Court for the District of Delaware, alleging infringement of selected claims of the two patents. Donuts moved to dismiss the complaints under Federal Rule of Civil Procedure 12(b)(6), arguing that all the claims of the patents are invalid because their subject matter is ineligible for patenting under § 101. In ruling on the motion to dismiss, the district court treated claim 1 of the '468 patent as representative of the claims at issue in the cases. J.A. 6–7. WhitServe does not now challenge that determination.

Claim 1 of the '468 patent recites:

> 1. A device for automatically delivering professional services to a client comprising:
>
> a computer;
>
> a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto;
>
> software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder;
>
> software executing on said computer for automatically generating a client response form based on the retrieved client reminder;
>
> a communication link between said computer and the Internet;
>
> software executing on said computer for automatically transmitting the client response form to the client through said communication link; and,
>
> software executing on said computer for automatically receiving a reply to the response form from the client through said communication link.

'468 patent, col. 6, line 56, through col. 7, line 8.

The district court concluded that the claims are directed to "the abstract idea of preparing, sending, and receiving responses to due-date reminders for clients of professional-service [providers]." *WhitServe*, 390 F. Supp. 3d at 577. The district court then determined that the claim elements, either individually or as an ordered

combination, recite "nothing more than generic computer components employed in a customary manner," and therefore do not transform the abstract idea into patent-eligible subject matter. *Id.* at 579–80 (quotation marks omitted). On that basis, the district court granted Donuts' motion to dismiss the complaints with prejudice and entered final judgments in Donuts' favor.

WhitServe timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

Subject-matter eligibility under § 101 is a question of law, resolved based on underlying facts. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (*Aatrix I*). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356, 1358–59 (Fed. Cir. 2018) (*Aatrix II*). We review the Rule 12(b)(6) dismissal de novo. *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018); *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018).

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. But there are several "implicit exception[s]" to this statutory grant—laws of nature, natural phenomena, and abstract ideas are not patent-eligible subject matter. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012). The Supreme Court in *Alice Corp. v. CLS Bank International* set forth a two-step

analysis to determine whether patent claims fall outside § 101.  573 U.S. 208, 217–18 (2014).  Under that framework, we ask (1) whether the claim, as a whole, is "directed to" patent-ineligible subject matter and (2) if so, whether the elements of the claim, considered individually or as an ordered combination, "'transform the nature of the claim' into a patent-eligible application."  *Id.* (quoting *Mayo*, 566 U.S. at 78).

## A

Proceeding within the two-step framework of *Alice*, we examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea."  *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018).  When the claims involve "software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'"  *Id.* (quoting *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)); *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[I]t is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool."); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285–86 (Fed. Cir. 2018); *CoreWireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1361–62 (Fed. Cir. 2018).  Under this framework, we conclude, WhitServe's claims are directed to an abstract idea.

Claim 1 of the '468 patent describes querying a database of client reminders having associated date information; sending, via the Internet, reminders to clients with approaching deadlines; including within those reminders a form for clients to give approval or further instructions to the professional regarding the approaching deadline; and receiving back, via the Internet, a client response.  '468

patent, col. 6, line 56, through col. 7, line 8.  The focus is on the idea of keeping track of deadlines for clients and carrying out two-way communications with clients relevant to meeting those deadlines, using computers and networks to do so.  The '468 patent specification confirms this focus, stating that the objects of the invention are to "improve[] the speed, efficiency, and reliability of performing services for clients" and to provide a system that "automatically prepares reminders and solicits replies for client due dates." *Id.*, col. 2, lines 16–22.

The focus of the claims is simply to use computers and a familiar network as a tool to perform a fundamental economic practice involving simple information exchange.  Carrying out fundamental economic practices involving simple information exchange is an abstract idea.  *See, e.g.*, *BSG*, 899 F.3d at 1286; *SAP America*, 898 F.3d at 1167–68; *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1261–62 (Fed. Cir. 2016).  And use of standard computers and networks to carry out those functions—more speedily, more efficiently, more reliably—does not make the claims any less directed to that abstract idea.  *See Alice*, 573 U.S. at 222–25; *Customedia*, 951 F.3d at 1364; *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092–93 (Fed. Cir. 2019); *SAP America*, 898 F.3d at 1167; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016); *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1355 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 1370 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Nothing in WhitServe's claims transforms the abstract idea that is the focus of its claims into a patent-eligible invention.  WhitServe describes the inventive concept as improving docketing systems through the use of databases, specific types of reminders, and software to generate client reminders and receive client responses.  Appellant's Br. 30–31.  But the specification itself states that "send[ing] a

client a reminder, obtain[ing] authorization or possibly executed documents from the client, and then tak[ing] some action based on the client's response" were "oftentimes" practiced by professionals. '468 patent, col. 1, lines 12–16. It adds that these steps were "typically" aided by the use of a database of client due dates. *Id.*, col. 1, lines 30–35. And nothing in the claims points to any improvement in off-the-shelf computers and existing communication networks.

WhitServe's claims require only generic components— "a computer," "a database," "software executing on said computer," and "a communication link between said computer and the Internet"—to perform their routine and conventional functions. *Id.*, col. 6, line 56, through col. 7, line 8. The specification describes the network-connected computer only as a "professional computer" capable of executing software. *E.g.*, *id.*, col. 3, line 18. The specification describes communication between the professional and the client simply as occurring "through an Internet communication link," an existing technology whose mechanisms of operation WhitServe's patents do not propose to alter. *Id.*, col. 4, line 35. The specification likewise makes clear that docketing systems commonly employed a database and software that "notifie[d] the professional of each upcoming deadline a preset time period before the deadline by . . . networked computer." *Id.*, col. 1, lines 30–35. These generic computer and communications components provide no eligibility-transformative inventive concept. And the specific ordered combination of these generic components is likewise insufficient, as it does nothing more than "spell out what it means to apply [the abstract idea] on a computer." *Capital One*, 792 F.3d at 1370 (quotation marks omitted).

WhitServe argues that the district court failed to consider the perspective of the relevant artisan in making its patent-ineligibility determination. We disagree. The district court noted what the patent itself teaches about the routine use of docketing systems by professionals and the

conventionality of the various claimed components, including the Internet and web pages, at the time of invention. *WhitServe*, 390 F. Supp. 3d at 574, 577–79; *see* '468 patent, col. 1, lines 12–16, 29–35; *id.*, col. 5, lines 22–26. The description of "already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is 'well-understood, routine, [and] conventional.'" *SAP*, 898 F.3d at 1170 (quoting *Mayo*, 566 U.S. at 73). In this case, therefore, the district court did not have to look beyond the specification to make its patent-eligibility determination.

WhitServe also points to alleged licensing of its patents as evidence of an inventive concept. We have held, however, that "[c]ommercial success is not necessarily a proxy for an improvement in a technology nor does it necessarily indicate that claims were drawn to patent eligible subject matter." *Versata Dev. Grp., Inc. v. SAP America, Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015). After all, ineligible ideas can be valuable. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278–79 (Fed. Cir. 2012). That the market found WhitServe's products or ideas desirable—and took licenses—does not override the now-straightforward conclusion that the patents claim no improvement in computer functionality or other eligible matter.[1]

---

[1]    WhitServe argues that our analysis should account for agency and judicial rulings that upheld its patents against various challenges. But patent eligibility under § 101 was not at issue in any of those earlier rulings. Thus, none either addressed or decided whether the claims at issue are eligible under the Supreme Court's *Alice* framework. Indeed, though the question was not presented to this court in *Whitserve I*, Judge Mayer suggested in dissent that the court should address it sua sponte and find the claims ineligible. 694 F.3d at 40–42 (Mayer, J., dissenting).

B

WhitServe argues that the district court should not have resolved this case at the pleading stage. But we have repeatedly made clear that "patent eligibility can be determined at the Rule 12(b)(6) stage" if there are no plausible factual allegations to impede such a resolution. *Aatrix I*, 882 F.3d at 1125; *see, e.g.*, *SAP America*, 898 F.3d at 1166. Factual questions relevant to the § 101 analysis, "[l]ike other legal questions based on underlying facts," do not prevent a judgment on the pleadings when the pleadings and exhibits attached thereto show that there are no plausible factual disputes. *SAP America*, 898 F.3d at 1166. In the § 101 context, "the specification alone" may suffice to resolve the patent-eligibility inquiry. *Aatrix II*, 890 F.3d at 1356; *see SAP America*, 898 F.3d at 1166. That is the case here, for the reasons we have already explained.

WhitServe next argues that its patent claims do not fall outside the text of § 101 or come within the statement in *Le Roy v. Tatham* that "[a] principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented." 55 U.S. 156, 175 (1852). But as discussed above, later Supreme Court decisions and our applications of those decisions have held that ineligible subject matter also includes fundamental economic practices involving simple information exchange implemented on off-the-shelf computers and networks. Those precedents control.

WhitServe finally argues that its due process rights were violated when the district court denied its request for an oral argument on the motion to dismiss. We disagree. The right to be heard in the context of a motion to dismiss is satisfied where the plaintiff receives an "opportunity to present legal arguments either orally, in writing, or both at the District Court's discretion." *Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 (3d Cir. 1976). Here, WhitServe had a full opportunity to oppose Donuts' 12(b)(6) motion in writing. WhitServe has not pointed to

any limitation that prevented it from giving full substantive expression to its argument.  The district court acted well within its discretion in not holding an oral argument on the motion to dismiss.

## III

For the forgoing reasons, we affirm the district court's judgment.

**AFFIRMED**